UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                          Case No. 8:19-bk-08152-CPM
                                                Chapter 7
Scott Allen Stroup

Jessica Rene Stroup,

        Debtors.
_____/

Mortimer & Son Lumber Company, Inc.,

                Plaintiff,
                                                Adv. Pro. No. _____
v.

Scott Allen Stroup and Jessica Rene Stroup,

                Defendants.
_____/

## COMPLAINT OBJECTING TO DISCHARGE OF DEBT PURSUANT TO 11 U.S.C. § 523

        Plaintiff, Mortimer & Sons Lumber Company, Inc., sues Debtors/Defendants, Scott Allen

Stroup and Jessica Rene Stroup, and alleges as follows:

### Jurisdiction and Venue

        1.      This court has jurisdiction pursuant to 28 U.S.C. § 1334, § 157(a), and § 157(b)

and other applicable law.

        2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and 11 U.S.C. § 523.

        3.      This Complaint is an adversary proceeding complaint pursuant to Rule 7001(1),

7001(4), and 7001(6) of the Federal Rules of Bankruptcy Procedure.

        4.      Venue is proper pursuant to 28 U.S.C. § 1409.

**General Allegations**

5.      Plaintiff, Mortimer & Son Lumber Company, Inc., is a Michigan corporation with its principal office in Port Huron, Michigan. Plaintiff does business in Lapeer County, Michigan.

6.      Defendant Scott Stroup is an individual and a member, agent, and representative of Stoup Builders, LLC, a Michigan limited liability company.

7.      Defendant Jessica Stroup is an individual and the wife of Defendant Scott Stroup.

8.      Defendants filed a voluntary petition as co-debtors under chapter 7 of title 11 of the United States Code on August 27, 2019. (Doc. No. 1.)

9.      Defendants' Section 341 meeting was held on October 2, 2019, and the Chapter 7 Trustee, Traci Stevenson, provided notice of recovery of assets on the same day.

**Promissory Note and Mortgage**

10.      Stroup Builders was a customer of Plaintiff and purchased various building and building related materials on account from Plaintiff for many years.

11.      Beginning at least in 2016, Stroup Builders failed to make payments for building and building related materials purchased on its open account.

12.      As of April 23, 2018, Stroup Builders had a balance on its account with Plaintiff of more than $250,000.

13.      On March 5, 2018, Stroup Builders and Defendant Scott Stroup gave Plaintiff a promissory note for $189,462.00 ("Note").  A copy of the Note is attached to this Complaint as Exhibit A.

14.      Stroup Builders, Defendant Scott Stroup, and Defendant Jessica Stroup induced Plaintiff into accepting the Note by misrepresenting the business activities of Stroup Builders, including the number of active revenue-generating projects, misrepresenting their plans for

Stroup Builders, and misrepresenting that upcoming closings of construction projects would provide funds to pay Plaintiff.

15.     However, Defendant Scott Stroup knew that Stroup Builders would not survive; indeed, upon information and belief, Stroup Builders ceased operations in August 2018.

16.     All monies due and payable under the Note, including accrued interest, were to be paid in full on or before October 25, 2018. Exhibit A.

17.     After executing the Note, and after Stroup Builders and Defendant Scott Stroup failed to make the first installment payment of $20,000 under the Note, Defendant Scott Stroup and Defendant Jessica Stroup agreed to secure the Note by a Mortgage on the property at 8011 Lantern Drive, Almont Township, Lapeer County, Michigan, dated April 23, 2018 ("Mortgage"). A copy of the Mortgage is attached to this Complaint as Exhibit B. The Mortgage was recorded May 1, 2018, at Liber 2958, Page 564, at the Lapeer County Register of Deeds.

18.     Notice of default and acceleration of the Note was provided to Stroup Builders and Defendant Scott Stroup dated June 13, 2018.

**Quandt Property**

19.     On or about June 12, 2018, Plaintiff learned that Stroup Builders and Defendant Scott Stroup had secured a payment for $10,521 on a building project for Christine Quandt at 3700 Martin Road, Mussey Township, St. Clair County, Michigan ("Quandt Property") by submitting via facsimile or electronic mail a forged partial waiver of lien by Plaintiff.

20.     Stroup Builders and Defendant Scott Stroup owe Plaintiff at least $33,599.73 on the Quandt Property.

21.     At no time did Plaintiff provide Stroup Builders or Defendant Scott Stroup a waiver of lien for the Quandt Property, and upon information and belief, Stroup Builders and

Defendant Scott Stroup illegally and improperly altered, modified and/or changed a conditional lien waiver provided by Plaintiff pertaining to an unrelated building project and submitted the altered, modified and/or changed lien waiver to obtain payment on the Quandt Property.

22.     Thereafter, Stroup Builders and Defendant Scott Stroup negotiated the check for $10,521 on the Quandt Property and did not pay Plaintiff any portion of the monies received, instead retaining and using the monies for their own use.

23.     Stroup Builders and Defendant Scott Stroup knowingly, intentionally and wrongfully took, detained or otherwise converted monies from the Quandt Property that rightfully belonged to Plaintiff and that were entrusted to Stroup Builders and Defendant Scott Stroup for Plaintiff's benefit.

**Yorkshire Property**

24.     Stroup Builders is the owner of certain real property located at 7812 Yorkshire, Village of Almont, Michigan ("Yorkshire Property").

25.     Plaintiff supplied materials in connection with improvements made to the Yorkshire Property at the request of and pursuant to an agreement with Stroup Builders and Defendant Scott Stroup.

26.      Plaintiff's first date of supplying materials on the Yorkshire Property was September 13, 2017, and Plaintiff's last date of supplying materials on Yorkshire Property was March 1, 2018.

27.     Plaintiff is owed $30,227.54, plus finance charges to date, by Stroup Builders and Defendant Scott Stroup in connection with the materials supplied for the Yorkshire Property.

28.     Upon information and belief, Stroup Builders and Defendant Scott Stroup have collected payment from a financial institution on the Yorkshire Property by presenting a false and/or illegal sworn statement.

**McIntosh Property**

29.     Stroup Builders is the owner of certain real property located at 367 McIntosh Drive, Village of Almont, Lapeer County, Michigan ("McIntosh Property").

30.     Plaintiff supplied materials in connection with improvements made to the McIntosh Property at the request of and pursuant to an agreement with Stroup Builders and Defendant Scott Stroup.

31.     Plaintiff's first date of supplying materials on the McIntosh Property was January 2, 2018, and Plaintiff's last date of supplying materials on the McIntosh Property was April 6, 2018.

32.     Plaintiff is owed $4,027.44, plus finance charges to date, by Stroup Builders and Defendant Scott Stroup in connection with the materials supplied for the McIntosh Property.

33.     Upon information and belief, Stroup Builders and Defendant Scott Stroup have collected payment from a financial institution on the McIntosh Property by presenting a false and/or illegal sworn statement.

**Hatfield Property**

34.     John and Susan Hatfield are the owners of certain real property located at 4750 Justin Drive, Almont Township, Lapeer County, Michigan ("Hatfield Property").

35.     Plaintiff supplied materials in connection with improvements made to the Hatfield Property at the request of and pursuant to an agreement with Stroup Builders and Defendant Scott Stroup.

36.     Plaintiff's first date of supplying materials on the Hatfield Property was April 11, 2018, and Plaintiff's last date of supplying materials on Hatfield Property was May 7, 2018.

37.     Plaintiff is currently owed $2,950.83, plus finance charges to date, by Stroup Builders and Defendant Scott Stroup in connection with the materials supplied for the Hatfield Property.

38.     Upon information and belief, Stroup Builders and Defendant Scott Stroup secured payment from the Hatfields or a financial institution by submitting via facsimile or electric mail a forged conditional waiver of lien by Plaintiff. Plaintiff provided no such waiver of lien.

39.     Upon information and belief, Stroup Builders and Defendant Scott Stroup negotiated the payment on the Hatfield Property and did not pay Plaintiff any portion of the monies received, instead retaining and using the monies for their own use.

40.     Upon information and belief, Stroup Builders and Defendant Scott Stroup knowingly, intentionally and wrongfully took, detained or otherwise converted monies from the Hatfield Property that rightfully belonged to Plaintiff and that were entrusted to Stroup Builders and Defendant Scott Stroup for Plaintiff's benefit.

**Bourque Property**

41.     Eric and Shelli Bourque are the owners of certain real property located at 3580 Rochester Road, Dryden Township, Lapeer County, Michigan ("Bourque Property").

42.     Plaintiff supplied materials in connection with improvements made to the Bourque Property.

43.     Plaintiff furnished material for improvement of the Bourque Property at the request of and pursuant to an agreement with Stroup Builders and Defendant Scott Stroup.

44.    Plaintiff's first date of supplying materials on the Bourque Property was March 29, 2018, and Plaintiff's last date of supplying materials on Bourque Property was May 15, 2018.

45.    Plaintiff is currently owed $5,765.37, plus finance charges to date, by Stroup Builders and Defendant Scott Stroup in connection with the materials supplied for the Bourque Property.

46.    Upon information and belief, Stroup Builders and Defendant Scott Stroup secured payment from the Bourques or a financial institution by presenting a false and/or illegal sworn statement.

47.    Upon information and belief, Stroup Builders and Defendant Scott Stroup negotiated the payment on the Bourque Property and did not pay Plaintiff any portion of the monies received, instead retaining and using the monies for their own use.

48.    Upon information and belief, Stroup Builders and Defendant Scott Stroup knowingly, intentionally and wrongfully took, detained or otherwise converted monies from the Bourque Property that rightfully belonged to Plaintiff and that were entrusted to Stroup Builders and Defendant Scott Stroup for Plaintiff's benefit.

49.    Plaintiff has sued Stroup Builders, Defendant Scott Stroup. Defendant Jessica Stroup, and others in the Circuit Court in the Circuit Court for the County of Lapeer, Michigan.

**<u>Count I – 11 U.S.C. § 523(a)(2)(A)</u>**

50.    Plaintiff realleges and reincorporates paragraphs 5 through 49 as if fully set forth herein.

51.    This is an action pursuant to 11 U.S.C. § 523(a)(2)(A) that the debt owed pursuant to the Note is nondischargeable in this bankruptcy.

52.     Defendants Scott Stroup and Jessica Stroup intentionally induced Plaintiff to accept the Note by false pretenses, false representations, and actual fraud.

53.     Defendants made a false representation with the intent to deceive Plaintiff by representing that Stroup Builders would continue to operate and generate revenue, although Defendants knew that Stroup Builders would not continue to operate for long after the execution of the Note.

54.     In addition, Stroup Builders and Defendant Scott Stroup made false representations with the intent to deceive when they presented to Quandt, the Hatfields, the Bourques, and certain financial institutions fraudulent lien waivers.

55.     Stroup Builders ceased operating in August 2018.

56.     Defendants knew that these representations were false.

57.     Defendants intended for the representations to deceive and defraud Plaintiff.

58.     Plaintiff relied on these representations by accepting the Note and Mortgage and forbearing on the amounts that were otherwise due and payable immediately.

59.     Plaintiff's reliance on Defendants' representations was reasonable under the circumstances, as Plaintiff had had a longstanding relationship with Stroup Builders and Defendants.

WHEREFORE, Plaintiff requests that this Court (a) order that Defendants' indebtedness to Plaintiff pursuant to the Note constitutes a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A); (b) grant a non-dischargeable judgment in favor of Plaintiff and against Defendants plus pre-judgment and post-judgment interest as provided by law, reasonable attorney fees, costs and expenses; and (c) grant all other appropriate relief.

## Count II – 11 U.S.C. § 523(a)(4) – Defalcation in Fiduciary Capacity

60.   Plaintiff realleges and reincorporates paragraphs 5 through 49 as if fully set forth herein.

61.   This is an action pursuant to 11 U.S.C. § 523(a)(4) that the debt owed for materials Plaintiff supplied in connection with the Quandt, Yorkshire, McIntosh, Hatfield, and Bourque properties is nondischargeable in this bankruptcy.

62.   Defendant Scott Stroup committed defalcation when he took for himself funds paid by Quandt, the Hatfields, the Bourques, and certain financial institutions after he presented these third parties with forged conditional waivers of lien by Plaintiff. The third parties, upon seeing the forged lien waivers by Plaintiff, paid Stroup Builders and Defendant Scott Stroup the amounts due for materials supplied by Plaintiff, and Defendant Scott Stroup was then required to forward these sums to Plaintiff; however, he did not do so.

63.   Defendant Scott Stroup was acting in a fiduciary capacity because the relationship between him and Plaintiff involved a statutory express or technical trust pursuant to Michigan Compiled Laws § 570.151.

64.   Defendant Scott Stroup excluded Plaintiff, the rightful owner of the funds, from the use and benefit of the funds.

65.   Defendant Scott Stroup's failure to remit the funds to Plaintiff was intentional and not innocent or negligent.

WHEREFORE, Plaintiff requests that this Court (a) order that Defendant Scott Stroup's indebtedness to Plaintiff pursuant to the funds obtained by defalcation constitute a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4); (b) grant a non-dischargeable judgment in favor of Plaintiff and against Defendant Scott Stroup plus pre-judgment and post-judgment

interest as provided by law, reasonable attorney fees, costs and expenses; and (c) grant all other appropriate relief.

### Count III – 11 U.S.C. § 523(a)(4) – Fraud in Fiduciary Capacity

66.     Plaintiff realleges and reincorporates paragraphs 5 through 49 as if fully set forth herein.

67.     This is an action pursuant to 11 U.S.C. § 523(a)(4) that the debt owed for materials Plaintiff supplied in connection with the Quandt, Yorkshire, McIntosh, Hatfield, and Bourque properties is nondischargeable in this bankruptcy.

68.     Debtors made a false representation with the intent to deceive Plaintiff by representing that they would remit the funds entrusted to him as a fiduciary.

69.     Debtors knew that these representations were false.

70.     Debtors intended for the representations to deceive and defraud Plaintiff.

71.     Defendant Scott Stroup committed fraud when he took for himself funds paid by Quandt, the Hatfields, the Bourques, and certain financial institutions after he presented these third parties with forged conditional waivers of lien by Plaintiff. The third parties, upon seeing the forged lien waivers by Plaintiff, paid Stroup Builders and Defendant Scott Stroup the amounts due for materials supplied by Plaintiff, and Defendant Scott Stroup was then required to forward these sums to Plaintiff; however, he did not do so.

72.     Defendant Scott Stroup was acting in a fiduciary capacity because the relationship between him and Plaintiff involved a statutory express or technical trust pursuant to Michigan Compiled Laws § 570.151.

73.     Plaintiff relied on these representations by supplying materials to the Quandt, Hatfield, and Bourque properties.

74.     Plaintiff's reliance on Debtors' representations was reasonable under the circumstances, as Plaintiff had had a longstanding relationship with Stroup Builders and Debtors.

75.     Plaintiff suffered a loss because of Debtors' representations because Plaintiff has not been paid for the materials supplied to the Quandt, Yorkshire, McIntosh, Hatfield, and Bourque properties.

WHEREFORE, Plaintiff requests that this Court (a) order that Defendant Scott Stroup's indebtedness to Plaintiff pursuant to the funds obtained by fraud constitute a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4); (b) grant a non-dischargeable judgment in favor of Plaintiff and against Defendant Scott Stroup plus pre-judgment and post-judgment interest as provided by law, reasonable attorney fees, costs and expenses; and (c) grant all other appropriate relief.

### Count IV – 11 U.S.C. § 523(a)(4) - Embezzlement

76.     Plaintiff realleges and reincorporates paragraphs 5 through 49 as if fully set forth herein.

77.     This is an action pursuant to 11 U.S.C. § 523(a)(4) that the debt owed for materials Plaintiff supplied in connection with the Quandt, Yorkshire, McIntosh, Hatfield, and Bourque properties is nondischargeable in this bankruptcy.

78.     Defendant Scott Stroup committed embezzlement when he took for himself funds paid by Quandt, the Hatfields, the Bourques, and certain financial institutions after he presented these third parties with forged conditional waivers of lien by Plaintiff. The third parties, upon seeing the forged lien waivers by Plaintiff, paid Stroup Builders and Defendant Scott Stroup the amounts due for materials supplied by Plaintiff, and Defendant Scott Stroup was then required to forward these sums to Plaintiff; however, he did not do so.

79.    Defendant Scott Stroup kept Plaintiff's property for himself with the intent to steal or permanently deprive Plaintiff of its property.

WHEREFORE, Plaintiff request that this Court (a) order that Defendant Scott Stroup's indebtedness to Plaintiff pursuant to the funds obtained by embezzlement constitute a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4); (b) grant a non-dischargeable judgment in favor of Plaintiffs and against Defendant Scott Stroup plus pre-judgment and post-judgment interest as provided by law, reasonable attorney fees, costs and expenses; and (c) grant all other appropriate relief.

### Count V – 11 U.S.C. § 523(a)(4) - Larceny

80.    Plaintiff realleges and reincorporates paragraphs 5 through 49 as if fully set forth herein.

81.    This is an action pursuant to 11 U.S.C. § 523(a)(4) that the debt owed for materials Plaintiff supplied in connection with the Quandt, Yorkshire, McIntosh, Hatfield, and Bourque properties is nondischargeable in this bankruptcy.

82.    Defendant Scott Stroup committed larceny when he took for himself funds paid by Quandt, the Hatfields, the Bourques, and certain financial institutions after he presented these third parties with forged conditional waivers of lien by Plaintiff. The third parties, upon seeing the forged lien waivers by Plaintiff, paid Stroup Builders and Defendant Scott Stroup the amounts due for materials supplied by Plaintiff, and Defendant Scott Stroup was then required to forward these sums to Plaintiff; however, he did not do so.

83.    Therefore, Defendant Scott Stroup wrongfully and with fraudulent intent took property from its owner, Plaintiff.

WHEREFORE, Plaintiff request that this Court (a) order that Defendant Scott Stroup's indebtedness to Plaintiff pursuant to the funds obtained by larceny constitute a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4); (b) grant a non-dischargeable judgment in favor of Plaintiffs and against Defendant Scott Stroup plus pre-judgment and post-judgment interest as provided by law, reasonable attorney fees, costs and expenses; and (c) grant all other appropriate relief.

### Count VI – 11 U.S.C. § 523(a)(6) – Willful and Malicious Injury

84.    Plaintiff realleges and reincorporates paragraphs 5 through 49 as if fully set forth herein.

85.    This is an action pursuant to 11 U.S.C. § 523(a)(6) that all debts owed by Defendants are nondischargeable in this bankruptcy.

86.    Defendants willfully and maliciously injured Plaintiff.

87.    Defendants either desired the consequences of their acts or believed that the consequences of their acts were substantially certain to result from their acts.

88.    Plaintiff suffered financial injury by Defendants' misrepresentations made to induce Plaintiff into accepting the Note and by Defendants' failure to remit funds entrusted to them as a fiduciary because Plaintiff supplied materials that it was not paid for. See Counts II and III.

WHEREFORE, Plaintiffs request that this Court (a) order that Defendants' indebtedness to Plaintiffs constitutes a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(6); (b) grant a non-dischargeable judgment in favor of Plaintiff and against Defendants plus pre-judgment and post-judgment interest as provided by law, reasonable attorney fees, costs and expenses; and (c) grant all other appropriate relief.

Dated: December 2, 2019    Respectfully submitted,

            IURILLO LAW GROUP, P.A.

            */s/ Camille J. Iurillo*
            Camille J. Iurillo, Esquire
            Fla. Bar No. 902225
            Alexander Zesch, Esquire
            Fla. Bar No. 106817
            5628 Central Avenue
            St. Petersburg, FL 33707
            (727) 895-8050 telephone
            (727) 895-8057 facsimile
            ciurillo@iurillolaw.com
            azesch@iurillolaw.com
            *Attorneys for Plaintiff*

14

# Exhibit A

# PROMISSORY NOTE

Amount:   $189,462.00
Due Date: October 25, 2018

Port Huron, Michigan
Dated: March 5ᵗʰ, 2018

      FOR VALUE RECEIVED, for which they acknowledge was satisfactory in all ways, **SCOTT STROUP**, individually, and **STROUP BUILDERS, LLC**, a Michigan limited liability company, of 8011 Lantern Drive, Almont, MI 48003, jointly and severally, promise to pay to the order of **MORTIMER AND SON LUMBER COMPANY, INC.**, of 2307 Lapeer Avenue, Port Huron, Michigan 48060, or at such place as the holder shall otherwise designate, the sum of One Hundred Eighty Nine Thousand Four Hundred Sixty Two and 00/100ths Dollars ($189,462.00) including any and all amounts owed on account and the cost of collection with interest at 20.4% per annum.

      Said debt shall be paid in monthly installments as follows:

1. Twenty Thousand and 00/100ths Dollars ($20,000.00) beginning the 25ᵗʰ day of March, 2018, and continuing on the same day of each month thereafter through April 25, 2018;

2. Thirty Thousand and 00/100ths Dollars ($30,000.00) beginning the 25ᵗʰ day of May, 2018, and continuing on the same day of each month thereafter through September 25, 2018.

3. Said entire balance of principal and interest of this note shall be paid in full by the 25ᵗʰ day of October, 2018.

      Payment shall be made payable to Mortimer and Son Lumber Company, Inc. and sent to Mortimer and Son Lumber Company, Inc. at 2307 Lapeer Avenue, Port Huron, MI 48060.

      **SCOTT STROUP** and **STROUP BUILDERS, LLC** shall reimburse **MORTIMER AND SON LUMBER COMPANY, INC.** for all expenses, including reasonable attorney fees and legal expenses that **MORTIMER AND SON LUMBER COMPANY, INC.** pays or incurs attempting to collect this note. In case of default under any terms of this note, or if **SCOTT STROUP** and **STROUP BUILDERS, LLC** shall fail to pay any future charges with **MORTIMER AND SON LUMBER COMPANY, INC.** within 45 days, then at the option of **MORTIMER AND SON LUMBER COMPANY, INC.**, without notice, any unpaid balance hereunder shall become immediately due and payable. Any failure to exercise this option shall not constitute a waiver of the right to do so.

      There shall be no penalty for prepayment of this note.

      The undersigned waives presentment for payment, protest and notice of protest and nonpayment.

This note shall be governed by and interpreted according to the laws of the State of Michigan. The undersigned are liable on this note.

**SCOTT STROUP AND STROUP BUILDERS, LLC IRREVOCABLY AND UNCONDITIONALLY WAIVES THEIR RIGHT TO A TRIAL BY JURY IN ANY ACTION, INCLUDING ANY CLAIM, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY CLAIM ("CLAIM"), THAT IS BASED UPON, ARISES OUT OF, OR RELATES TO THIS NOTE OR THE INDEBTEDNESS EVIDENCED BY IT, INCLUDING, WITHOUT LIMITATION, ANY CLAIM BASED UPON, ARISING OUT OF, OR RELATING TO ANY ACTION OR INACTION OF CREDITOR IN CONNECTION WITH ANY ACCELERATION, ENFORCEMENT, OR COLLECTION OF THIS NOTE OR SUCH INDEBTEDNESS.**

WITNESSES:

Scott Stroup, Individually and on Behalf of
Stroup Builders, LLC

STATE OF MICHIGAN )
)SS.
COUNTY OF LAPEER )

This instrument was acknowledged before me this 5th day of March, 2018, by Scott Stroup, individually and on behalf of Stroup Builders, LLC.

Mike Kiley

Notary Public – Mike Kiley
State of Michigan, County of Tuscola
My commission expires: Oct 2nd 2019
Acting in the County of Lapeer

2

# Exhibit B

 

RECORDED ON
05/01/2018 2:17:12 PM
LORI L. GEBHARDT
LAPEER COUNTY REGISTER OF DEEDS

$30.00  RECEIPT# 544, STATION 1E
MORTGAGE

  LIBER 2958  PAGE 564

**MORTGAGE**

Drafted by:
David A. Keyes
Kelly Law Firm
627 Fort Street
Port Huron, MI  48060

THIS MORTGAGE, Made on April 23, 2018

For the sum of One Hundred Forty-Nine Thousand Four Hundred Sixty-Two and 00/100ths Dollars ($149,462.00)
the receipt of which is hereby acknowledged
Scott Stroup and Jessica Stroup, husband and wife,
whose address is 8011 Lantern Drive, Almont, Michigan 48003
herein referred to as the Mortgagor, MORTGAGES and WARRANTS to
Mortimer and Son Lumber Company, Inc.
whose address is 2307 Lapeer Avenue, Port Huron, Michigan 48060,
herein referred to as the Mortgagee, the following described lands and premises situated in the Township of Almont, Lapeer County, Michigan, to wit:

    See attached Exhibit A.

    More Commonly Known As:  8011 Lantern Drive, Almont, MI 48003

    (Tax I.D. No. 44-001-022-053-00)

Together with the easements, hereditaments, appurtenances, buildings, structures, and all fixtures which may now or at any time hereafter be situated thereon and attached thereto, to secure the performance of the covenants hereinafter contained.

THE MORTGAGOR COVENANTS WITH THE MORTGAGEE AS FOLLOWS:

    1.    That this mortgage is security and secures the re-payment of aforesaid sum with interest as set forth in a Promissory Note executed by Scott Stroup and Stroup Builders, LLC, bearing the date of March 5, 2018 executed by Mortgagor Scott Stroup to the Mortgagee and secured by this Mortgage ("Note"), and such other sums with interest as set forth in other evidence of indebtedness as the Mortgagee may hereafter advance to the Mortgagor or any additional sums which Mortgagor may now or hereafter owe Mortgagee, including all purchases made by Mortgagor on or after the date of this Mortgage.

    2.    To pay when due all taxes, assessments, and other charges which now are, or shall hereafter be or appear to be, a lien upon all or any part of said property and for which provision has not been made herein, and in default thereof, the Mortgagee may, without demand or notice, pay the said taxes, assessments, charges or encumbrances.

    3.    To insure all the buildings, structures, and the improvements now existing or hereafter erected on said property against loss by fire and other hazards and casualties in such companies, in such amounts, and for such periods as shall be approved or required by the Mortgagee, and shall pay when due all premiums on such insurance for which provision has not been made hereinbefore.  All insurance policies and renewals thereof shall be held by the Mortgagee and have attached thereto loss payable clauses in favor of and in forms approved by the Mortgagee.  In the event of loss the Mortgagors shall give immediate notice by mail to the Mortgagee, which may make proof of loss if not made promptly by the Mortgagors.  Any insurance company is authorized and directed to make payment for such loss directly to the Mortgagee, and the      insurance      proceeds      or      any      party      thereof      may

DELIVERED ON
05/01/2018 2:56:46 PM
LAPEER CO REGISTER OF DEEDS

DELIVERED ON
04/02/2018 12:56:46 PM
LAPEER CO REGISTER OF DEEDS

LIBER 2958 PAGE 565

be applied by the Mortgagee either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In the event of foreclosure of this mortgage or other transfer of title to the mortgaged property in satisfaction of the indebtedness secured hereby, all right title and interest of the Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee. If the Mortgagor shall fail to procure such insurance, the Mortgagee may procure the same and pay the premiums thereon.

4.   To abstain from the commission of waste, and to keep all property covered hereby in good repair and to comply promptly with all laws, ordinances, regulations and requirements of any governmental body applicable thereto. If said property or any part thereof shall require inspection, repair or care of any kind which the Mortgagor shall fail to provide, the Mortgagee may, after giving written notice to the Mortgagor by personal delivery thereof, or by mailing such notice to the Mortgagor's last known address, enter, inspect, repair and care for said property and pay such amounts thereof, as in its sole judgment it may deem necessary.

5.   If any default be made in this mortgage, the Mortgagee may cause any title evidence in its possession for said property to be extended to date, or may procure new title evidence if none was furnished to the Mortgagee, and may pay therefore such amounts as in its sole judgment it may deem necessary. In the event of foreclosure said title evidence shall become the property of Mortgagee.

6.   If damages are awarded for the taking of or injury to said property, or any part thereof, whether under the power of eminent domain or otherwise, all such damages shall be paid to the Mortgagee, and if paid prior to the redemption from foreclosure of this mortgage, shall be applied to reduce the indebtedness secured by the mortgage.

7.   If any person or persons shall succeed to the interest of the Mortgagor in said property, or any part thereof, the Mortgagee may enter into such agreements with any such successor as it may desire. The Mortgagor, by reason thereof, shall not be deemed to have been released to any extent whatever from liability for the payment of the debt secured hereby.

8.   Mortgagor shall notify Mortgagee of any financing statement or security instrument entered into pursuant to the provisions of the Uniform Commercial Code (M.S.A. 19.1101), and affecting the above described premises, and failure to do so shall be deemed to be a default, and at Mortgagee's election, the entire indebtedness shall be due and payable, or Mortgagee may pay said indebtedness.

9.   To pay to the Mortgagee forthwith all amounts which the Mortgagee shall pay pursuant to any of the aforesaid provisions, together with interest upon each of said amounts from the time of the payment thereof by the Mortgagee until repayment by the Mortgagors at the maximum rate of interest as set forth in any of the note or notes or any other evidence of indebtedness secured hereby. Said amounts so paid by the Mortgagee may be immediately added to the unpaid balance secured hereby and shall be a further lien on said property.

10.   As additional security for the repayment of the indebtedness hereby secured, Mortgagor hereby assigns to Mortgagee all rents and income arising from mortgaged premises, together with all rights and interest of the lessor in existing leases upon or affecting said premises, together with extensions or renewals of such leases; provided that, so long as there is no default in any of the terms and conditions of the mortgage, or note hereby secured, Mortgagor shall continue to manage said premises as owner and collect all income arising therefrom, but only as it accrues.

11.   Any of the following shall constitute a default under this Mortgage: default in the payment of said indebtedness, or any part thereof in the manner provided in the evidence or evidences of indebtedness, including the Note, or in the performance of any of the covenants or conditions in this Mortgage or the Note; if Mortgagor sells, transfers, conveys, mortgages, or encumbers the property; if the Mortgagor makes an assignment for benefit of creditors; if Mortgagor declares bankruptcy or is involuntarily placed in bankruptcy; if Mortgagor shall allow or permit or do any act to weaken the security herein or do any act whereby said property is made less valuable; or if Mortgagee must advance additional sums for payment of any of Mortgagor's obligations in respect to subject property or advance sums to protect subject property. In the event of default, Mortgagee may, without notice, at its option, declare the entire indebtedness secured hereby due, then or thereafter, as it may elect, regardless of the date of maturity and is hereby authorized and empowered to sell or cause to be sold said premises and appurtenances thereto belonging, pursuant to the statute in such case made and provided, and out of the proceeds of the

LIBER 2968   PAGE 566

sale to retain the sums then due hereunder, and all costs and charges of the sale, including the attorney's fee provided by statute, rendering any surplus moneys to Mortgagor. The commencement of proceedings to foreclose this mortgage in any manner authorized by law shall be deemed an exercise of the above option.

12.    That the word "Mortgagor" and "Mortgagee" shall be read in the singular or plural and shall be construed in the masculine, feminine or neuter as the case may be.

13.    That the covenants and agreements contained in this mortgage shall run with the land, and shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

SIGNED, SEALED AND DELIVERED by the Mortgagor the day and year first above written.

Signed in the Presence of:                    Signed by:

_____            _____
                                                        Scott Stroup

_____            _____
                                                        Jessica Stroup

STATE OF MICHIGAN        )
                                          )SS.
COUNTY OF LAPEER        )

The foregoing instrument was acknowledged before me by Scott Stroup on April 23, 2018.

_____
Notary Public – Mike Kiley
State of Michigan, County of Tuscola
My commission expires:  Oct 2   2019
Acting in the County of Lapeer

STATE OF MICHIGAN        )
                                          )SS.
COUNTY OF Lapee          )

The foregoing instrument was acknowledged before me by Jessica Stroup on April 23, 2018.

_____
Notary Public –  Lena Opiola
State of Michigan, County of  Lapeer
My commission expires:   11.20.2022
Acting in the County of  Lapeer

When Recorded Return To:
David A. Keyes
Kelly Law Firm
627 Fort Street
Port Huron, MI 48060

**LENA OPIOLA**
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF LAPEER
My Commission Expires Nov. 20, 2022
Acting in the County of Lapeer



LIBER 2958    PAGE 567

Exhibit "A"

Part of the Southeast 1/4 of Section 22 and part of the Southwest 1/4 of Section 23, Township 6 North, Range 12 East, Almont Township, Lapeer County, Michigan, described as beginning at a point that is North 2 degrees 12 minutes 14 seconds West 1696.34 feet along the East line of Section 22 and on a curve to the right, radius 233.0 feet, central angle 15 degrees 40 minutes 34 seconds and whose chord bearing and distance is North 5 degrees 38 minutes 07 seconds East 63.55 feet from the Southeast corner of Section 22; thence continuing along said curve, radius 233.0 feet, central angle 41 degrees 28 minutes 26 seconds and whose chord bearing and distance is North 34 degrees 12 minutes 33 seconds East 165.0 feet; thence North 2 degrees 12 minutes 14 seconds West 926.68 feet; thence South 88 degrees 02 minutes 50 seconds West 106.62 feet to the East 1/4 corner of Section 22; thence South 86 degrees 44 minutes 56 seconds West 239.71 feet; thence South 00 degrees 30 minutes 50 seconds West 1028.58 feet; thence South 86 degrees 47 minutes 54 seconds East 298.44 feet to the point of beginning. Together with and subject to a 66 foot wide Road Easement for ingress and egress purposes, whose centerline is described as beginning at a point on the South Section line that is North 85 degrees 48 minutes 46 seconds East 33.02 feet from the Southwest corner of Section 23; thence North 2 degrees 12 West 1695.20 feet; thence on a curve to the right, radius 200.0 feet, central angle 88 degrees 01 minutes chord bearing and distance, North 41 degrees 48 minutes 16 seconds East 277.91 feet; thence North 85 degrees 48 minutes 46 seconds East 781.0 feet to a point of ending at the center of a 70 foot radius turn-around, and also together with easement rights for ingress and egress purposes over and across a 66 foot wide strip of land, the centerline of which is described as beginning at a point that is South 5 degrees 38 minutes 07 seconds West 63.55 feet and South 2 degrees 12 minutes 14 seconds East 218.82 feet from the Southeast corner of said parcel; thence South 88 degrees 35 minutes 50 seconds West 2790.69 feet to a point of ending.